BERRY v. CITY OF SPRINGDALE.

5111                                         381 S. W. 2d 745

Opinion delivered September 14, 1964.

*James M. Blair,* for appellant.
No brief filed for appellee.

CARLETON HARRIS, Chief Justice. The issue in this case is whether appellant, Homer Berry, was guilty of public drunkenness. On August 3, 1963, Berry was apprehended by Patrolman Bill Smith of the City of Springdale, and charged with the offense of drunkenness. Smith testified that about 1:45 A.M., he noticed appellant's truck stopped near the regular driving portion of Highway No. 71 in Springdale. According to the officer's testimony, the truck was not more than twenty-five feet, and not less than ten feet, from the paved portion of the highway, and was on the right of way. Smith's attention was directed to the truck because of the fact that he noticed fire in the back end of the vehicle. Upon making examination, he found appellant, apparently asleep in the cab of the truck, and when the officer opened the door, Berry almost fell out. Smith testified that he caught appellant to prevent his falling to the ground; that the latter could not stand on his feet; that he (Smith) could smell the odor of alcohol. Appellant identified himself as Major Homer Berry, stating that he was a "rain

maker." Smith testified that he assisted Berry to the patrol car; "I helped him by placing both of my hands under his arm pits and practically dragging him to the car." Berry insisted that he wanted to "stoke the burners,"[1] but the officer could not find fuel of any kind in the back of the vehicle. According to the witness, Berry maintained that he had only "had two beers." Appellant was convicted in the Municipal Court of Springdale of the offense of "Drunk on the highway," and was fined. On appeal, the Circuit Court found appellant guilty of public drunkenness (trial by jury having been waived), and fined Berry $15.00 and costs.[2]

From the judgment so entered comes this appeal.

It is first urged that the city failed to establish that appellant was guilty of any crime for which he could be lawfully prosecuted. This contention is based on the argument that Berry was not actually in a "public place" at the time of his arrest.

The statute, in effect at the time of this offense, is Ark. Stat. Ann. § 48-943 (1947), and reads as follows:

"Any person who shall in any public place, or highway, or street, or in or upon any passenger coach, street car, or in or upon any vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station or room, drink any intoxicating liquor of any kind, or if any person shall be drunk or intoxicated in any public place, or in any passenger coach, street car, or other public place or building, or at any public gathering, or if any person shall be drunk and disorderly, he shall be guilty of a misdemeanor and upon conviction thereof shal be punished by a fine of not less than five [$5.00] dollars nor more than one hundred [$100.00] dollars, or by imprisonment for not less than

---

[1] According to appellant's brief, for the purpose of inducing rain, Berry burned coke which had been infused with certain chemicals, with the intention that the resulting smoke would rise into the air and precipitate moisture. The coke was burned in two barrels which were located in the back of appellant's pickup truck.

[2] The fact that the Circuit Court technically found Berry guilty of public drunkenness, rather than "Drunk on Highway," as charged in the Municipal Court, is not argued as constituting error in itself.

five [5] days nor more than thirty [30] days, or by both such fine and imprisonment.''

There is no evidence that appellant was drinking in a public place, nor is there any contention that he was disorderly. The question, therefore, is whether one sitting in a motor vehicle ten to twenty-five feet from the traveled portion of the highway is in a "public place" as contemplated by the statute.

Under sound logic, as well as construction by other courts of statutes similar to our own, we have concluded that the answer to the above question is "yes." Under statutes in some jurisdictions, there is a requirement that the intoxication must be coupled with boisterous or indecent conduct before the offender can be found guilty of the offense of public drunkenness, but it will be observed that our statute contains no such provision.

Certainly, Berry was not found in a private locality, and if he had been walking (or lying) alongside the highway at the same distance, no difficult question would be presented. Webster's Third New International Dictionary defines "public" as "a place accessible or visible to all members of the community." The Texas case of Walker v. State, 350 S. W. 2d 561, bears some similarity to the instant cause. In that case the defendant was found asleep in his automobile in a bar ditch along the highway, apparently having gone off the edge of the culvert while attempting to make a right hand turn. The sheriff found in the vehicle an open can of beer, which had turned over and spilled, and two unopened cans of beer. As here, the defendant contended that the evidence was insufficient to sustain a conviction, in that, at the time of the arrest, he was not in a public place. The Court of Criminal Appeals rejected this contention, and held that the evidence was sufficient to sustain the conviction. Earlier cases were cited, including Byrom v. State, 73 S. W. 2d 854, where the court said that a public place is "a place where all persons are entitled to be."[3]

---

[3] Article 477, V.A.P.C., provides: "Whoever shall get drunk or be found in a state of intoxication in any public place, or at any private house except his own, shall be fined not exceeding one hundred dollars."

Here, appellant's vehicle was ten to twenty-five feet away from the traveled portion of the road, and, according to the arresting officer, apparently had reached its final location through accident. Officer Smith testified:

"This truck was on the crest of a hill west of Fayetteville Lake. There is a flat place on top of this hill in the borrow pit and it appeared that this truck had just run out of the road up onto the embankment and rolled back down and come to a stop. It had been put in neutral, the engine was still running. My first thought was to charge the man with actually being in control of a vehicle while intoxicated."

As heretofore mentioned, the officer also testified that Berry stated that he had only had "two beers." While we consider that the primary purpose of the statute against public drunkenness is to prevent annoyance to other members of the general public, the statute likewise serves as a protection to the offender himself. Here, Berry was asleep, with the motor of the truck running and the window glass up. It is common knowledge that under similar circumstances many persons have been asphyxiated when the exhaust system or heater of the vehicle was defective. Not only that, but the unattended fire, which occasioned the officer's attention, could well have, had the wind risen, gotten out of control and burned the truck, or surrounding property. We think the recited testimony was sufficient to enable the trial court to find that Berry's offense was committed "in a public place."

It is also urged that the evidence was insufficient to establish appellant's intoxication. We do not agree. In addition to the testimony of Smith, Joe Frank Sims, likewise a patrolman for the Springdale police, testified that he assisted Berry into the station; that the latter was unstable on his feet, and dirty; that his clothes were untended; that his shirttail was out, and that his language was incoherent. He likewise stated that the odor of alcohol from appellant's breath and body was very strong, and it was his opinion that Berry "had been drinking considerably heavy." Luther Shipley, desk operator at the police station, testified that the officers helped Berry

through the door to the desk "holding him up. Helping him walk." Shipley stated that Berry, after entering the station, "said he was sick," and requested a physician, and Dr. Joe Parker arrived approximately 45 minutes after the arrest had been made. The doctor stated that he could not say with reasonable certainty whether Berry was intoxicated or not, but that he could smell the alcohol.

We are of the view that the evidence herein set out, constituted sufficient and substantial evidence to support the judgment of the court. Counsel for appellant points out that the witnesses for the prosecution did not know Berry, and accordingly were not familiar with his normal actions. Of course, there could be incidents where a person, because of an affliction, or accident, could not walk straight—or talk coherently—but there is no showing that this was true in the present instance. It would hardly be logical to require that an arresting officer have a prior acquaintance with a defendant before he could qualify to testify that the individual arrested was drunk. We dare say that a large number of arrests for drunkenness, perhaps the majority, are made in instances where the arresting officer has no prior acquaintance with the person arrested. Officer Smith had served with the Springdale Police Department for seven years, and testified that he had experience in arresting violators for public drunkenness.

We find no reversible error.

Affirmed.

JOHNSON, J., dissents.