# IN THE COURT OF APPEALS OF IOWA

No. 24-0154
Filed July 23, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RYAN SCOTT PEARSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Cheryl Traum, Judge.


        A defendant appeals his convictions after a conditional guilty plea, challenging the district court's denial of his motion to suppress. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.


        Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Early one morning, a police officer saw Ryan Pearson passed out behind the wheel of his idling truck in a casino parking garage. Pearson's truck was unlocked and what appeared to be a handgun was visible on the passenger seat. Concerned, the officer called for backup, blocked in the truck, roused him awake, and removed him from the vehicle. It quickly became clear Pearson was impaired, so he was taken to the police station for further investigation. After he was criminally charged with operating a motor vehicle while intoxicated and possessing a dangerous weapon while intoxicated, he moved to suppress all the evidence arising out of his encounter with law enforcement that morning, arguing he was unconstitutionally seized. The district court denied the motion, holding that the community-caretaking exception authorized the seizure. Pearson and the State agreed to a conditional guilty plea, preserving the suppression issue for appeal.

Because Pearson's appeal presents the same issue reserved by his plea and success on appeal would afford some relief, our interest-of-justice jurisdictional requirement is satisfied. And on the merits, we agree with the district court that Pearson's warrantless seizure falls within the community-caretaking exception. The officer's testimony during the suppression hearing shows he was subjectively motivated to check on Pearson's wellbeing. Concern for the safety of a driver who is passed out next to a handgun is objectively reasonable. And the intrusion into Pearson's privacy was not so great as to outweigh the substantial public interest in securing a firearm within an unlocked vehicle and preventing a drowsy or intoxicated driver from driving onto public roadways. We thus affirm the district court's suppression ruling and Pearson's conviction.

I.

Around 1:30 a.m. on February 4, 2023, a Bettendorf police officer noticed a pickup truck idling in a parking spot in a casino parking garage. The truck was backed into the spot and was running with its headlights on. A man—Pearson—was asleep in the driver's seat. The officer approached the truck and saw a handgun in the passenger seat.[1] And the truck's doors were unlocked. The officer was concerned and decided to "check on him," as "typically people don't sleep with a handgun next to them and their car unlocked."

The officer waited for backup to arrive, and a police vehicle parked in front of Pearson's truck, which was customary to ensure Pearson did not accidentally drive the truck forward and injure himself or someone else upon waking. The officer then opened the driver's side door and roused Pearson. The smell of alcohol was immediately present. The officer guided Pearson out of the vehicle and observed Pearson with bloodshot, watery eyes. So the officer performed the horizontal gaze nystagmus test, which indicated Pearson was impaired.

Pearson was handcuffed and transported to the police station for further testing. At the station, Pearson mentioned taking a prescription medication earlier that day. Officers then obtained a search warrant, which allowed them to collect a blood sample from Pearson. And based on the results, Pearson was charged with operating while intoxicated, third offense, and possession of a dangerous weapon while intoxicated. *See* Iowa Code §§ 321J.2, 724.4C (2023).

---

[1] Pearson later gave officers consent to search his truck, which confirmed the gun on the seat was a BB gun and that another legitimate handgun was also present in the vehicle.

Pearson moved to suppress all the evidence arising out of his initial encounter with law enforcement—including the blood specimen—arguing he was unlawfully seized under both the United States and Iowa Constitutions. The State justified the seizure under both the community-caretaking exception and based on reasonable suspicion of intoxication. And the court denied Pearson's motion, agreeing that the seizure was lawful under both of the State's theories.

Pearson later entered a conditional guilty plea to both charges, wherein he and the State agreed to reserve the suppression issue for appeal. Pearson was sentenced to two years in prison, with all but seven days suspended. He now appeals his conviction, challenging the denial of his suppression motion.

II.

To begin, because Pearson appeals from a conditional guilty plea, we must assure ourselves of appellate jurisdiction. *See* Iowa Code § 814.6(3). We have jurisdiction over a conditional guilty plea reserving an issue for appeal only when "entered by the court with the consent of the prosecuting attorney and the defendant or the defendant's counsel" and "when the appellate adjudication of the reserved issue is in the interest of justice." *Id.* Because Pearson's appeal of the suppression ruling "is the same issue reserved by the conditional guilty plea, and success on appeal of that issue would give [Pearson] some relief," the interest-of-justice jurisdictional threshold is satisfied. *State v. Scullark*, __ N.W.3d __, 2025 WL 1717213, at *2 (Iowa 2025). We thus have jurisdiction to proceed to the merits, reviewing the district court's suppression ruling de novo. *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018).

Both our federal and state constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV, Iowa Const. art. I, § 8. Warrantless searches and seizures "are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement." *State v. Tyler*, 867 N.W.2d 136, 169 (Iowa 2015) (cleaned up). One such exception is community caretaking. *State v. Abu Youm*, 988 N.W.2d 713, 718 (Iowa 2023). This exception is grounded not in the routine investigative functions of law enforcement but turns on the duty "to help citizens an officer reasonably believes may be in need of assistance." *Tyler*, 867 N.W.2d at 170 (cleaned up).

We apply the community-caretaking exception when (1) there was a constitutional seizure, (2) officers were engaged in bona fide community-caretaking activity, and (3) the public interest outweighed the intrusion on the citizen's privacy. *Id.* Still, "[e]very community caretaking case must be assessed according to its own unique set of facts and circumstances because reasonableness is not a term that can be usefully refined in order to evolve some detailed formula for judging cases." *State v. Kurth*, 813 N.W.2d 270, 277 (Iowa 2012) (cleaned up).

*Pearson was seized*. In the district court, the State did "not contest a seizure occurred within the meaning of the Fourth Amendment" and instead focused its resistance on the exception's latter two prongs. On appeal, the State similarly does not contest that Pearson was seized but disputes the precise moment of seizure and whether reasonable suspicion had materialized by then. Because we need not resolve this dispute, we assume without deciding that Pearson was seized when the officers blocked in his car and proceed to the second prong.

*Officers engaged in bona fide community-caretaking activity.* Community-caretaking activity generally falls within three recognized categories: rendering emergency aid, impounding or inventorying an automobile, and performing public-servant duties. *Id.* at 277. The first and third categories could apply here, and the two are "analytically similar." *Coffman*, 914 N.W.2d at 245. To illustrate the distinction, "an officer assists a motorist with a flat tire under the public servant doctrine, but an officer providing first aid to a person slumped over the steering wheel with a bleeding gash on his head acts pursuant to the emergency aid doctrine." *Id.* (cleaned up). Under the Fourth Amendment, we decide whether the officer is engaged in community caretaking under either category objectively "based on the information available at the time of the" seizure. *Id.* at 257. But under the Iowa Constitution, the State carries the burden "to prove *both* that the objective facts satisfy the standards for community caretaking *and* that the officer subjectively intended to engage in community caretaking." *Id.*

Pearson insists that merely catching some sleep did not justify officer intervention, but we have little trouble finding bona fide community-caretaking activity here. First, the officer's testimony showed he was subjectively motivated to "check on" Pearson after observing him passed out next to a handgun early in the morning in a casino parking garage. Second, concern for Pearson's safety was objectively reasonable—checking on an unresponsive person in a running vehicle is both "justifiabl[e]" and "commendable" law enforcement conduct. *State v. Kersh*, 313 N.W.2d 566, 568–69 (Iowa 1981), *abrogated on other grounds by State v. Lake*, 476 N.W.2d 55, 56–57 (Iowa 1991). That the officer later turned his attention to Pearson's possible intoxication does not negate the initial existence of

a community-caretaking function, as Pearson urges. And third, Pearson's position that he was merely sleeping ignores the other heightening facts on the scene—a visible handgun in an unlocked vehicle. Thus, the officers acted firmly within the bounds of community-caretaking functions.

*Public interest outweighed any privacy intrusion.* Finally, we find the constitutional balance between the public interest and the intrusion upon Pearson's privacy tips in favor of applying the exception. The public necessity of securing a firearm within an intoxicated driver's vehicle was the impetus of the community-caretaking doctrine. *See Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). Weighed against that substantial public safety interest is Pearson's reduced expectation of privacy within his vehicle. *See State v. Brown*, 930 N.W.2d 840, 853 (Iowa 2019). And any intrusion was minimal and appropriately cabined to the steps necessary to protect Pearson and others—rousing him awake, blocking his truck to ensure he could not drive onto public roadways in his either drowsy or impaired state, and distancing him from the handgun. Thus, finding all three elements satisfied, we affirm the denial of Pearson's suppression motion and his convictions.

**AFFIRMED.**